UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL OWEN FREDERICK,

                Plaintiff                     Civil Action No. 10-11349

v.                                       HON.  SEAN F. COX
                                         U.S. District Judge
                                         HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Owen Frederick brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On March 30, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of December 13, 2005 (Tr. 89-91).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on January 13, 2009 in Lansing, Michigan before Administrative Law Judge ("ALJ") Jerome J. Berkowitz (Tr. 25).  Plaintiff, represented by attorney Mikel Lupisella, testified, as did Medical Expert ("ME") Mary Jo Voelpel and Vocational Expert ("VE") Michelle Ross (Tr. 28-44, 44-47, 47-50).  On July 1, 2009, ALJ Berkowitz found that Plaintiff was not disabled (Tr. 23).  On January 28, 2010, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on April 5, 2010.

## BACKGROUND FACTS

Plaintiff, born January 11, 1956, was 53 when the ALJ issued his decision (Tr. 23, 89).  He completed high school and worked previously as an assembler and stocker (Tr. 124, 127).  He alleges disability as a result of Carpal Tunnel Syndrome ("CTS") (Tr. 123).

### A.      Plaintiff's Testimony

Plaintiff, a resident of Owosso, Michigan, testified that he was 5' 7" and weighed 255 pounds (Tr. 29).  He reported that he lived in a one-story single family home with his wife (Tr. 29).  Plaintiff denied currently receiving unemployment or Workers' Compensation benefits (Tr. 30).

Plaintiff testified that he held a valid driver's licence and continued to drive (Tr. 30).  He said he could read and perform simple mathematics without difficulty (Tr. 31).  He reported that on a typical day, he would arise at 7:00 a.m., eat breakfast and prepare a meal for his grandson (Tr. 31).  He reported that he spent the rest of day caring for his grandson and reading (Tr. 32-33).  He testified that on a typical evening, he and his wife would watch television or receive visits from family and friends (Tr. 34).  Plaintiff reported that he retired at 10:00 p.m. but experienced sleep problems as a result of neck and back pain (Tr. 34).

Plaintiff indicated that he cared for his personal needs without help, but experienced difficulty performing fine manipulations (Tr. 32).  He indicated that he was able to help with cleanup chores and grocery shopping  "a little bit" (Tr. 33).  He reported that he owned a computer but was "computer illiterate" (Tr. 33).  Plaintiff testified that financial limitations prevented him from dining out frequently (Tr. 34).  He reported that he continued to garden on a limited basis but denied hunting and fishing, club memberships, or going to church (Tr. 35).  He reported that after quitting his full-time job in December, 2005, he continued a newspaper delivery route until the summer of 2006 (Tr. 36).

-2-

Plaintiff alleged that CTS in both wrists precluded work, adding that financial constraints prevented him receiving treatment for the condition (Tr. 37-38). He acknowledged that he had not sought medical treatment since 2006 and that his back pain was attributable to obesity (Tr. 38). He reported that he had previously received medication for depression, but had not refilled the prescription in several months (Tr. 39). He admitted that he currently drank two quarts of beer every day (Tr. 40).

Plaintiff alleged that he was unable to sit for more than 15 minutes or stand for 30 without discomfort (Tr. 40). He declined to estimate how far he could walk, but noted that he could lift 25 pounds on a frequent basis and "maybe" lift 50 occasionally (Tr. 41). He reported difficulty bending, squatting, reaching overhead, and climbing stairs and ladders (Tr. 42). On a scale of one to ten, he rated his typical pain level from six to "off the scale," but denied balance problems (Tr. 43). He opined that his concentrational abilities had declined (Tr. 43). Plaintiff testified that his failure to seek treatment for the last two years was attributable to his inability to afford health insurance (Tr. 50).

**B.     Medical Expert Testimony**

Dr. Mary Jo Voelpel noted that Plaintiff denied balance or foot problems, but reported hand tingling (Tr. 44). Referring to the results of a February, 2006 MRI, she found that Plaintiff had experienced a synovial cyst of the left wrist and "degenerative cystic changes" on the right (Tr. 45). She noted that the diagnosis of CTS was confirmed by a May, 2006 EMG (Tr. 45). She noted further that a non-treating source found "no restrictions in terms of activities of daily living" (Tr. 45). Dr. Voelpel opined that Plaintiff's manipulative activities would be restricted and that he would be limited to lifting 20 pounds occasionally and 10 frequently, with occasional twisting, bending, climbing of ladders, and lifting overhead (Tr. 46-47). She found that he was capable of sitting, standing, or walking for up to six hours of an eight-hour work shift (Tr. 47).

-3-

**C. Medical Records**

**1. Treating Sources**

October, 2005 treating notes by Douglas Strong, M.D. state that Plaintiff's depression was "stable" and that he was not "suicidal" (Tr. 183). Dr. Strong remarked that Plaintiff complained of ongoing back strain and was due to lose his job as a result of a January, 2006 business closure (Tr. 183). Plaintiff was prescribed Prozac (Tr. 183). December, 2005 imaging studies of the both hands and wrists were unremarkable for fractures (Tr. 191-194). However, EMG studies by Gavin I. Awerbuch, M.D. showed the presence of bilateral CTS (Tr. 201). Plaintiff was prescribed therapy, wrist splints, and advised to take "B" complex vitamins (Tr. 200-201). In February, 2006, an MRI of the right wrist showed only mild degenerative changes (Tr. 190). Dr. Awerbuch prescribed Celebrex and advised Plaintiff to stay off work (Tr. 198). An MRI of the left wrist showed "cystic fluid collection" and degenerative changes at the pisotriquetral joint (Tr. 189). Plaintiff was discharged from physical therapy at the end of February, 2006 for non-attendance (Tr. 188). In May, 2006, Dr. Awerbuch observed positive Tinel's, Phalen's, and Finkelstein's signs bilaterally (Tr. 197, 213). In August, 2006, Dr. Awerbuch, noting that the results of an EMG taken the same month showed ongoing bilateral CTS, referred Plaintiff to a hand surgeon (Tr. 210). He advised Plaintiff to continue to stay off work, take Celebrex, and wear wrist splints (Tr. 212).

**2. Consultive or Non-examining Sources**

In August, 2006, J.L. Tofaute, M.D. performed a consultive physical examination on behalf of the SSA, noting Plaintiff's complaints of wrist weakness and swelling (Tr. 217). Plaintiff denied surgery on either hand, but reported wearing splints intermittently (Tr. 217). Plaintiff noted that his 19-year-old son helped him perform heavy outdoor chores (Tr. 217). Dr. Tofaute observed that Plaintiff did not "posture or protect with either hand" (Tr. 218). He observed further that Plaintiff

-4-

moved without difficulty and showed "good facility with both hands" (Tr. 218).  Range of motion studies showed normal results (Tr. 222).

Also in August, 2006, a non-examining Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation in both the upper and lower extremities (Tr. 252).  Plaintiff was limited to frequent (as opposed to *constant*) climbing of ramps and stairs, stooping, and crouching and *occasional* climbing of ladders, ropes, and scaffolds, kneeling, and crawling (Tr. 253).  Plaintiff was also restricted to "limited" handling and fingering (Tr. 254).  The Assessment found the absence of visual or communicative limitations (Tr. 254-255).  Environmental limitations consisted of "avoiding even moderate exposure" to vibration (Tr. 255).  Citing  consultive examination observations and a wide range of daily activities, the Assessment concluded that Plaintiff's claims were only "partially credible [sic] "(Tr. 256).

The following month, psychologist L.J. McCulloch performed a consultive psychological examination of Plaintiff on behalf of the SSA (Tr. 230).  Plaintiff alleged anxiety, a "short fuse," and cognitive slowness (Tr. 226).  He admitted drinking two quarts of beer each day for the past 25 years but denied blackouts (Tr. 226).  He attributed his failure to seek help to financial problems (Tr. 226).  He denied seeking help from AA or ever receiving mental health treatment (Tr. 226).  Plaintiff reported that he had "fair" relationships with his former coworkers (Tr. 227).  He noted that a typical day consisted of watching the news, paying the bills, and performing errands (Tr. 227).

Noting Plaintiff's history of alcohol dependence and physical concerns, Dr. McCulloch assigned Plaintiff a GAF of 60[1] (Tr. 229).  He found that due to Plaintiff's use of money to buy

---

[1] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* at 34 ( *DSM-IV-TR* ) (4th ed.2000).

alcohol, he would *not* be able to manage his benefit funds (Tr. 229).

In October, 2006, a  Mental Residual Functional Capacity Assessment was performed on behalf of the SSA (Tr. 233-235).  The Assessment found that Plaintiff had *moderate* limitations in the following work related functions: carrying out detailed instructions, maintaining concentration for extended periods, interacting appropriately with the general public, maintaining socially appropriate behavior, and responding appropriately to changes in the work place (Tr. 233-234).   His other limitations were deemed mild  (Tr. 233-234).  The Assessment concluded that  Plaintiff could "do unskilled work on a sustained basis" (Tr. 235).

A Pschiatric Review Technique ("PRT") performed the same month found the presence of an affective disorder (depression), a somatoform disorder, and substance addiction disorders (Tr. 237, 240, 243, 245).   The Technique found that Plaintiff had moderate difficulty maintaining social functioning and "concentration, persistence, or pace" but otherwise mild limitations (Tr. 247).

### D.   Vocational Expert Testimony

VE Michelle Ross classified Plaintiff's former work as an assembler and stocker as  unskilled at the medium exertional level[2]  (Tr. 47, 178).  The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history

> "Impaired by carpal tunnel syndrome with right wrist and hand pain, substance abuse, depression . . . a possible somatoform disorder . . . alleged low back pain, and neck and shoulder pain.  He takes no medications so really there are no work-related side effects from that.  In this first hypothetical I would limit to 20 pounds occasional and 10 frequent.  He can at least occasionally bend, twist, climb stairs, balance, stoop,

_____

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

crouch, kneel, and crawl.  Overhead reach would also be at least occasional.  He's
able to stand and walk six of eight, sit six of eight.  I would have the work as
relatively [sic] simple, routine . . . where contact with supervisors, coworkers and
general public is . . . brief and superficial.

(Tr. 48).  The VE stated that the above limitations would preclude Plaintiff's former work  but would

allow him to perform the unskilled, exertionally light work of a machine tender (8,800 positions in

the State of Michigan), line attendant (4,800), and light assembler (18,500) (Tr. 48-49).  The VE

testified that if the individual were further limited by a preclusion on "assembly line or conveyor belt"

work requiring "heavy pinching" or "heavy grasping," the assembler position would be unavailable

(Tr. 49).

### E.      The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ Berkowitz found that Plaintiff

experienced the severe impairments of  "carpal tunnel syndrome with associated wrist and hand pain,

lower back pain, neck . . . and shoulder pain, [a] depressive disorder, and [a] substance abuse

disorder," but that none of the conditions met or medically equaled the impairments found in Part 404

Appendix 1 Subpart P, Appendix No. 1 (Tr. 13-14).   The ALJ found that Plaintiff retained the

following Residual Functional Capacity ("RFC"):

 to perform light work . . . standing and walking for six hours out of an eight hour
workday, sitting for six hours out of an eight hour workday, with only occasional
climbing stairs, twisting, bending, balancing, stooping, crouching, kneeling,
crawling, and overhead reaching, with no repetitive fine-manipulation, heavy
pinching or heavy grasping (such as an assembly-line or conveyor-belt work), and
limited to simple, routine work with only brief and superficial contact with
coworkers and the public

(Tr. 16).  Consistent with the VE's final job findings, the ALJ determined that although Plaintiff was

unable to perform his former job, he could work as a machine tender or line attendant (Tr. 21-22).

In support of the non-disability finding, the ALJ found that Plaintiff's "statements concerning

the intensity, persistence and limiting effects" of his physical conditions were "not credible to the

extent they [were] inconsistent with the above residual functional capacity assessment" (Tr. 19).   He noted that Plaintiff's claims were undermined by his broad range of activities of daily living ("ADLs") including performing outdoor chores, shopping, driving, food preparation, laundry chores, and visiting with family members (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Hypothetical Question

Plaintiff argues that the hypothetical limitations posed by the ALJ did not reflect the moderate deficiencies of concentration, persistence, and pace found by October, 2006 PRT. *Plaintiff's Brief* at 6-12, *Doc. #11* (citing Tr. 247). Citing *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), Plaintiff contends that the ALJ's failure to account for his full degree of limitation invalidates the Step Five job findings. *Id.* at 6-7.

*Varley* sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments" (internal citations omitted). *Id.* at 779; *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence. *Id.*

The failure to account for concentrational deficiencies constitutes reversible error. In *Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." Likewise, under the current scale, "moderate" deficiencies suggest substantial limitations which should be acknowledged in the hypothetical question. The fact that a job is simple and unskilled has nothing to do with whether or to what degree a worker's moderate concentrational deficiencies will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies. *See, e.g., Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *see also Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir.1996).

In the present case however, the ALJ's hypothetical question does not present grounds for remand. First, Plaintiff concedes that an ALJ need not include the talismanic language of the Psychiatric Review Technique or Mental RFC Assessment in hypothetical questions to avoid remand. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Therefore, the ALJ did not err in omitting the phrase "moderate deficiencies in concentration, persistence, and pace" from the question.

Second, the hypothetical question more than adequately covered Plaintiff's concentrational limitations. The ALJ's inference that depression did not prevent Plaintiff from performing work within the hypothetical limitations is well supported by the record. Despite allegations of depression, Plaintiff testified that he drove, ran errands, performed outdoor work, and cared for his grandson despite the fact that he had not taken antidepressants in several months (Tr. 39). The ALJ nonetheless included "depression" among the hypothetical impairments and limited Plaintiff to "simple, routine work where contact with supervisors, coworkers and [the] general public is . . . superficial," drawing his choice of psychological impairments directly from the PTR findings (*compare* Tr. 48-49, 247). I note that the ALJ's restriction to "simple, routine work" (accompanied by the limitations of

-10-

depression and limited contact with supervisors, etc.) is more restrictive than the Mental RFC Assessment's finding that Plaintiff could perform "unskilled work on a sustained basis" (Tr. 235). Significantly, while Plaintiff asserts that the hypothetical question was incomplete, he offers no suggestion as to how the limitations could be altered to better reflect his concentrational impairments. Because the ALJ's choice of hypothetical limitations is generously supported by the PRT, Mental RFC Assessment, and the record as a whole, this argument should be rejected.

**B. SSR 00-4p**

Plaintiff also argues that the ALJ erred by failing to ask the VE if her testimony conformed to the information found in the *Dictionary of Occupational Titles* ("DOT"). *Brief* at 13.

SSR 00-4p provides in pertinent part:

> "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."

2000 WL 1898704, at *4. "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec*. 560 F.3d 601, 603 (6th Cir. 2009)(*citing* SSR 00-4p, 2000 WL 1898704, at *4). "ALJs must also 'obtain a reasonable explanation for ... apparent conflict[s]' if the VE's evidence "appears to conflict with the DOT." *Id.* (*citing* 2000 WL 1898704, at *4).

A reading of the administrative hearing transcript shows that the ALJ failed in his "affirmative duty" to question the VE as required by SSR 00-4p. While the *Lindsley* court rejected the plaintiff-

appellant's argument that the ALJ's questions regarding information found in the DOT were not sufficiently specific to satisfy the Regulation, it did not address the question of whether the omission of the inquiry, unaccompanied by erroneous VE testimony, constitutes reversible error.

In *Lancaster v. Commissioner of Social Security* 2007 WL 1228667, *11 (6th Cir. April 26, 2007), the court remanded on the basis that the ALJ erroneously found that the VE's job findings were "consistent with the DOT" despite the fact that he failed to inquire about such conflicts at the hearing. However, *Lancaster* is distinguishable from this point forward. In the district court, Lancaster argued and discussed actual inconsistencies between the VE's testimony and the DOT, whereas here, Plaintiff has not alleged any inconsistency other than to assert in a one-sentence argument that "the jobs identified by the VE of machine tender and line attendant appear to conflict with" the hypothetical preclusion on repetitive fine manipulation or heavy pinching or grasping. *Plaintiff's Brief* at 13.

*Lancaster* skirts the question of whether the failure to pose the "inconsistencies" question, in and of itself, mandates remand, noting that "[c]ourts are divided as to whether the failure to inquire into DOT inconsistencies entitles a Plaintiff to relief." However, there is considerable support for the application of a harmless error rule where the ALJ fails to make the required inquiry regarding the DOT. *See Brown v. Barnhart,* 408 F.Supp.2d 28, 35 (D.D.C. 2006)("[T]here is substantial and persuasive authority that under SSR 00-4p, "the mere failure to ask such a question cannot by itself require remand"); *see Hodgson v. Barnhart,* 2004 WL 1529264, at *2 (D.Me. 2004) ("the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the vocational expert's testimony were in fact consistent with the DOT. Only an inconsistency between the testimony and the DOT that affects a plaintiff's claim could reasonably provide the basis for overturning the commissioner's decision"); *Jackson v. Barnhart,* 120 Fed.Appx. 904, 906, 2005 WL

23363 *1 (3rd Cir. 2005)("Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision."); *Tisoit v. Barnhart,* 127 Fed.Appx. 572, 575, 2005 WL 751916, *2, fn 1(3rd Cir. 2005)("This Court has not held that mere failure to inquire about the possibility of an inconsistency under SSR 00-4p mandates reversal."). *But see Teverbaugh v. Commissioner of Social Security,* 258 F.Supp.2d 702, 706 (E.D.Mich. 2003) (Roberts, J.)("Because the VE's testimony was the only step five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings").

In the present case, the ALJ's failure to make the required inquiry  amounts to harmless error. To be sure, other courts have reversed on the basis that the "inconsistencies with the DOT" question was omitted.  *See Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir. 1999); *Prochaska v. Barnhart,* 454 F.3d 731, 736 (7th Cir. 2006).  However, in each instance, the ALJ's failure to make the 00-4p inquiry was coupled with an identifiable inconsistency between the VE's testimony and the DOT.  As discussed below, Plaintiff has failed to identify an inconsistency between the DOT and the hypothetical limitations.  Further, in contrast to *Teverbaugh* (in which the VE failed to provide DOT job codes) the present VE included such codes along with her representative findings (Tr. 48-49). Because the VE actually cited DOT job codes in giving her testimony, the Court should not grant a remand for the wholly redundant inquiry of whether the job codes cited from the DOT conflict with information found in the DOT.   *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir.2004); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion)("where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.")

-13-

Further, while Plaintiff's makes a conclusory one-sentence argument that the jobs of machine tender and line attendant "appear to conflict" with the ALJ's findings, this argument is meritless.  The job description for the VE's first finding, Job Code 637.685-102  (Wafer Abrading Machine Tender) is stated as follows:

> Adjusts controls to set speed, time, and pressure of abrading belts according to specifications. Loads container of wafers into abrading machine and starts machine that automatically abrades surface of wafer. Removes abraded wafers from machine and inspects wafers to detect abrading defects, such as cracks, using microscope. Replaces worn abrading belts.

While the machine tender position involves some degree of manipulative activity, the duties involving adjusting controls, loading and removing wafer, and inspecting the machine for defects does not require the repetitive hand and wrist movement or heavy pinching or grasping  precluded by the hypothetical.

Likewise, the VE's second job finding does not conflict with the hypothetical limitations.  Job Code 920.687-042 (Bottling Line Attendant) requires a combination of the following activities:

> Prepares filled whiskey bottles for packing and shipping, performing any combination of following duties: Pastes labels and tax stamps on filled whiskey bottles as bottles pass on conveyor. Examines bottles to ascertain that labels and stamps have been correctly applied. Straightens labels and stamps on bottles. Presses stamps on necks of bottles. Wipes excess glue and moisture from bottles. Packs whiskey bottles into cartons. Pastes identification labels on cartons.

Again, the VE's testimony is not inconsistent with the ALJ's restrictions.  While this job involves some use of hand and wrist movements, the alternating activities of packing, pasting, inspecting, and wiping would avoid the repetitive manipulative activities and heavy grasping or pinching precluded by the hypothetical question.

Finally, although Plaintiff was represented by counsel at the administrative hearing, the record shows that counsel did not raise an objection to the substance of VE's job findings. While counsel's

-14-

failure object to the testimony at the hearing does not per se bar him from raising the issue here (*see Sims v. Apfel,* 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085-86, 147 L.Ed.2d 80 (2000)), the courts frown upon "sandbagging" administrative decisions by presenting evidence or issues for the first time upon judicial review which could have been raised before the ALJ.  *Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir.1991); *See also Ledford v. Astrue,* 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. 2008)(citing *Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir.2006)).

In closing, I note that substantively speaking, the transcript amply supports the administrative findings.  While Plaintiff has established a certain degree of limitation as a result of CTS, the ALJ's determination that the he is capable of unskilled light work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra.*

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within fourteen  (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

-15-

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  March 25, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on March 24, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 24, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217

-16-